Bond *v.* Greenwald.

PENELOPE BOND, adm'x, *v.* N. GREENWALD *et al.*

1. SUPREME COURT. *Jurisdiction to vacate decree.* This court has jurisdiction, on motion, under sec. 4501 of the Code, to vacate a decree, upon the ground that the judgment or decree was rendered through inadvertance and oversight, when on the face of the record no cause of action existed. The decree was rendered at a former term.

Cases cited: Bond *v.* Greenwald, 4 Heis., 453, 464, 470.
Code construed: Sec. 4501.

2. CONTRACTS. *Entirety and indivisibility of. What will not constitute. Chancery practice.* Where cotton was sold for *about* 40 cents per pound, and the proof showing that it was sold at 26 cents in gold or its equivalent (39 cents), does not bring the case within the rule of variance between the contract and that stated in the pleadings. The court say: "The cause of action stated in the bill, is the sale and delivery

Bond *v.* Greenwald.

of cotton to defendant, not gold or greenbacks; they are but the mediums or means by which the demand of the plaintiff is to be satified. Complainant brought his action because the defendant, Greenwald, had bought and received his cotton and failed and refused to pay for it; and if the consideration alleged is substantially proved, it is sufficient. The price is alleged to be about 40 cents, and the decree of this court was rendered at 39 cents, which is in substantial accordance with the contract as proved and so held to be in the opinion."

3. CHANCERY PRACTICE. *Injunction.* Where a party has title to property about to be sold by a decree of the Chancery Court seeking to settle the rights of other litigants, he may file his bill to enjoin the sale of the same in the *same court*, and have his rights decided.

Case cited: Deaderick *v.* Smith, 6 Hum., 147.

4. SAME. *Clerk and Master. Report of.* The master is not allowed to go outside of instructions in his report, but must pursue such as are given him.

FROM HAYWOOD.

Appeal from the Chancery Court. JNO. W. HARRIS, Chancellor.

VANCE & ANDERSON and T. J. FREEMAN for defendants.

BATE, READ and READ for complainant.

DEADERICK, J., delivered the opinion of the court.

In this case a preliminary question is presented by the motion of defendants to vacate the decree entered by this court at its April term, 1871. At that term the cause was here upon writ of error to the Chancery Court at Brownsville, issued upon the application of complainant. A decree was then pronounced by this court in favor of complainant, and the motion is made by defendants to vacate that decree, under sec.

4501 of the Code, upon the ground that the judgment or decree pronounced against defendants was rendered through inadvertence and oversight, when, upon the face of the record, no cause of action existed against them.

The section of the Code referred to authorizes this court, upon its own motion, to vacate any such judgment or decree.

It has been most earnestly argued that the record does not show any cause of action against defendants.

The bill, which was filed by intestate in his lifetime, charges that about the month of ———, 1862, his agent, in his absence, sold and delivered to defendant Greenwald about eighty-three bales of cotton (belonging to complainant), for which Greenwald was to pay about forty cents per pound, and that he has never paid anything for it, although often requested so to do, and is still indebted for the same.

In another part of the bill complainant charges that the value of the said cotton was, at the time of the sale, about $20,000.

An attachment was prayed for, and issued, and levied upon several lots in Brownsville, and one at Bell's Depot, in Haywood county. An attachment was also issued to Shelby county and levied upon Greenwald's interest in a stock of goods in Memphis, in which one Labe was equal partner with him. A replevy bond in the penalty of $40,000 was given, and the levy on the goods released.

Greenwald answered the bill, and denied that he bought any cotton of complainant, or owed him any-

thing; but stated that he bought 280 bales of cotton at 26 cents of James Bond, of which he delivered but 52 bales, and that he was ready and willing to pay the amount due upon said 52 bales, after deducting damages sustained by him by reason of the failure to deliver the balance of the 280 bales bought.

Proof of the sale of complainant's cotton was made by James Bond, the agent of Lewis T. He proved the contract to be that Greenwald was to take all of Lewis T.'s crop, estimated at 100 bales more or less, at the price of 26 cents per pound in gold or its equivalent; and it was also proved that Greenwald was to take the cotton from the gin as it was ginned and weighed, and that he took away 52 bales, and that 30 more bales were ginned and weighed, which he failed to take away for more than a month after it was ginned and weighed, and then the Federal soldiers took it away. It was also proved that 39 cents in greenbacks, or United States treasury notes, was equivalent to 26 cents in gold.

The Chancellor charged the defendant in his decree with 53 bales only, and at the April term, 1871, this court reversed the Chancellor's decree, holding Greenwald liable for 82 bales sold and delivered, at the price of 39 cents in greenbacks or United States currency, being the equivalent of 26 cents in gold, and rendered a decree, including interest, for $28,150.29.

This statement of the material parts of the record we think is a sufficient refutation of the proposition of the defendant, that "no cause of action existed."

The bill distinctly alleges an indebtedness for 83

bales of cotton sold and delivered, at the price of about 40 cents per pound.

The answer denies that defendant Greenwald bought any cotton of Lewis T., and the proof shows that he did make a contract with James Bond, as agent of Lewis T., by which he bound himself to take the crop of Lewis T., which turned out to be 82 bales, at the price of 26 cents in gold or its equivalent, which is shown to be 39 cents; and at this price for the 82 bales, the weight of which was also proven, a decree was rendered by this court at its April term, 1871.

The opinion of the court, delivered by Sneed, J., and reported in 4 Heis., 453, and the subsequent opinions by Nicholson, C. J., pp. 464 and 470, upon applications to rehear and modify the decree of the court, show that there was no oversight or inadvertance in the action of the court. On the contrary, upon the pleadings, it is adjudged that Greenwald bought and received the cotton at the price of 39 cents per pound, being the equivalent of 26 cents per pound in gold.

It is argued that "the contract as alleged must be substantially proven," and sec. 66, 1 Gr. Ev., is cited to show that "in actions upon contracts, if any part of the contract proved should vary materially from that which is stated in the pleadings, it will be fatal, for a contract is an entire thing and indivisible." In illustration of the rule, the author states that if the consideration alleged be one horse bought by the plaintiff of the defendant, and the proof be of

Bond *v.* Greenwald.

two horses, the variance will be fàtal. And it is insisted the bill charging that the cotton was sold at *about* 40 cents per pound, and the proof showing that it was sold at 26 cents in gold or its equivalent, shown to be 39 cents, brings the case within the rule above cited; and there being no evidence to support the allegation, from the face of the record no cause of action existed against defendant Greenwald.

The cause of action stated in the bill, is the sale and delivery of cotton to defendant, not gold or greenbacks; they are but the mediums or means by which the demand of the plaintiff is to be satisfied. Complainant brought his action because the defendant, Greenwald, had bought and received his cotton and failed and refused to pay for it; and if the consideration alleged is substantially proved, it is sufficient. The price is alleged to be about 40 cents, and the decree of this court was rendered at 39 cents, which is in substantial accordance with the contract as proved and so held to be in the opinion.

The motion to vacate the decree rendered at the April term, 1871, will be overruled.

The cause was remanded by this court, the decree reciting the levy of the attachment on the goods of Greenwald in Memphis, and the execution by him and by defendants Labe, Jones and Seay as his sureties, of a replevy bond; and also reciting the levy of an attachment upon the lots in Brownsville and at Bell's Depot, and that the said lots had been sold, except the lot at Bell's Depot, for $2,580. The decree then proceeds to declare that the court being of opinion

that complainant is entitled to have satisfaction of his decree for the sum of $28,150.29 out of the said property attached, renders a decree against Greenwald and his sureties on the replevy bond for the $28,150.29 and costs of suit, and awards execution for the same; and the cause was remanded to ascertain what disposition was made of the proceeds of the sale of the real estate, and to carry out and execute the decree of this court, and to have an account taken by the master showing the disposition of the $2,580, proceeds of the sale of the real estate attached, and of any other sums of money that may have been paid upon the debt, and credit the same, and interest, on the decree, and report to the next term of the Chancery Court.

At the December term, 1867, of the Chancery Court, the lots in Brownsville and Bell's Depot had been ordered to be sold, and decree rendered against Greenwald and his sureties on' his bond. The lots in Brownsville were sold, and the master reported the sale in July, 1868, which was confirmed in September, 1868, without exception, no reason being given for not selling the Bell's Depot lot, and no renewal of the order of sale being made.

After the cause was remanded to the Chancery Court, a decree was entered at the September term, 1871, directing the master to report in accordance with the principles of the decree of this court.

At the February term, 1872, the master reported, showing the balance due at that time, after deducting payments, to be $15,940.61.

The master also reported that in 1868 a bill was filed by one Yancy (in said Chancery Court) against complainant Bond, said Greenwald and the clerk and master, enjoining the sale of the Bell's Depot lot, which was worth $3,000 to $3,500.

The master states in his report that no steps were taken in said cause of Yancy against him and others, except that an injunction bond, not marked filed, was with the papers in the cause. The rule docket, however, shows that the bill was filed the 25th of March, 1868, and cost and injunction bonds, with security.

The filing of this bill was no doubt the reason why the Bell's Depot lot was not sold. No steps seem to have been taken by Greenwald, although he is made a defendant to this bill, to dissolve the injunction, for which a *fiat* seems to have been granted, although, as it was to operate on the clerk and master, it does not appear that any injunction was formally issued to him.

This is not like the case in 6 Hum., of *Deaderick* v. *Smith*, where the Chancery Court at Murfreesboro enjoined proceedings in the Chancery Court at Franklin. Here the proceedings enjoined are in the same court in which the bill is filed. Although it would have been competent to the complainant in the injunction bill to have made himself a party, by petition, to the original cause, yet, in the case in 6 Hum., 147, where a purchaser was seeking to be relieved from his purchase, it is said that he might file a bill, and make the parties to the original cause defendants, and have a decree, but he shall pay costs.

If Yancy had title to the lot about to be sold, he might file his bill to enjoin the sale of it in the same court in which the sale was ordered, and have his right decided.

The complainant and defendant Jones excepted to the master's report, and Jones entered a motion to have the value of the Bell's Depot lot applied as a credit on complainant's decree, or to have the master enquire and report upon the value and disposition of this lot.

This motion and the exceptions to the report were overruled, and a decree rendered confirming the report, from which both parties have appealed.

Complainant's first exception is, that the master improperly reported on the Bell's Depot lot, when not authorized to do so by the order of reference. This is technically well taken. The master is not allowed to go outside of instructions in his report, but must pursue the instructions given him. 2d. A report was made to the August term, 1871, which, upon the application and affidavit of Jones, was set aside. No notice was given to Jones and sufficient reasons were disclosed for setting aside said report, and the Chancellor acted properly in recommitting it.

Defendant Jones's first exception is, that this court, in its decree remanding the cause to the Chancery Court, shows that the Bell's Depot lot was attached and not sold, and that the value of the lot should have been credited to defendants in said report. This exception is not well taken. The decree of this court was rendered against Greenwald and his sureties, and

Bond *v.* Greenwald.

execution ordered to issue for the whole sum found due complainants, less the proceeds of the sale of the Brownsville lots and other payments made. It did not assume to adjudicate upon the question of title to the Bell's Depot lot, or intend to require complainant to litigate with Yancy about the title, but the manifest intention of the decree was that, after deducting the amount which had been paid on the decree of complainant, execution should issue against Greenwald and his sureties on his bond for the balance, and for the purpose of ascertaining such payments the cause was remanded. The second and third exceptions are in substance the same as the first, and were properly overruled.

The decree of the Chancellor was, therefore, substantially correct, and will be affirmed, each party paying one-half of the costs of this court, except as to such part of the record upon the appeal as was already in this court. Such part having been necessarily transcribed, no costs will be taxed for the duplicate of it.